## Case No. 10,386.

### The N. W. THOMAS.

### [1 Biss. 210.] [1]

Circuit Court, S. D. Ohio. Oct. Term, 1857.

SALE UNDER STATE LAW—PRIOR ADMIRALTY LIEN.

1. The sale of a vessel under a state statute does not divest a prior admiralty lien.

[Cited in McAllister v. The Sam Kirkman, Case No. 8,658.]

[Cited in The E. A. Barnard, 2 Fed. 722.]

2. As between the purchaser at the marshal's sale, and the purchaser under the state court proceedings, the former has a good title, even though the proceedings in the state court may have been first instituted. The case is similar to that of a purchaser of land on execution, which is afterwards sold under a prior mortgage.

3. If a state should institute proceedings in rem, unknown to the common law, which interfere with a rightful exercise of the admiralty law, it would be a violation of the constitution and laws of the Union.

4. The statutes of Ohio and Missouri as to attachment of boats and vessels construed.

[Appeal from the district court of the United States for the Southern district of Ohio.]

The libel was filed in 1854 on a claim for services performed on the above boat. The respondents in their answer say, that after the date of the alleged claim of the libellants, the steamboat N. W. Thomas was seized on a warrant issued from the court of common pleas of Hamilton county, under a statute of the state, at the instance of material men, and on the 16th of February, 1854, sold by the sheriff to the claimants who claim to hold it free from all prior liens. The district court overruled this defense, and decreed that the claim of the libellants was a lien upon the boat, and that it should be sold, &c. [Case unreported.] The lien of the libellants was prior in date to that of the respondents.

T. D. Lincoln, for libellants.

The libellants have a lien upon the boat preferable to any other lien even in admiralty, and prior to a bottomry bond. The Globe [Case No. 5,484]; Abb. Shipp. 662; The Favourite, 2 C. Rob. Adm. 232; Pitman v. Hooper [Cases Nos. 11,185 and 11,186]; Taylor v. The Royal Saxon [Id. 13,803]; The Sydney Cove, 2 Dod. 11; Blaine v. The Charles Carter, 4 Cranch [8 U. S.] 328. The lien in admiralty is not lost by a sale or by a forfeiture or condemnation of the vessel to

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

the government, and it is preferable even to bottomry bonds. The Globe [supra]; Abb. Shipp. 662; U. S. v. Wilder [Case No. 16,694]; St. Jago de Cuba, 9 Wheat. [22 U. S.] 409; The Sydney Cove, 2 Dod. 12; Blaine v. The Charles Carter, 4 Cranch [8 U. S.] 328; Harmer v. Bell, 22 Eng. Law & Eq. 64. It being an admiralty lien, the state courts can take no jurisdiction of it, because the ninth section of the judiciary act gives the United States courts exclusive jurisdiction in all admiralty and maritime causes. 1 Stat. 76,957; Ashbrook v. The Golden Gate [Case No. 574]; The Globe [supra]; The John Richards [Case No. 7,361]; The Chusan [Id. 2,717]. The Ohio law does not profess to enforce the admiralty lien, but proceeds to create new liens and liabilities, and to enforce them, entirely regardless of the admiralty preferences and priorities. See first and second sections Swan's Statutes (p. 185, new Ed.; p. 209, old Ed.). The lien when acquired by the Ohio law is inferior to the admiralty lien. Dudley v. The Superior [Case No. 4,115]. Under this law it has been held that the court cannot enforce other maritime liens. Goodsill v. The St. Louis, 16 Ohio, 178. In none of the states do they enforce the lien laws of other states, as is done in admiralty courts. Noble v. The St. Anthony, 12 Mo. 263; Wight v. Maxwell, 4 Mich. 45. The party who first seizes the boat in the state courts is the first satisfied. Jones v. The Commerce, 14 Ohio, 412. It was originally held to apply only to such cases as originated in the state. The Champion v. Jantzen, 16 Ohio, 91; Goodsill v. The St. Louis, Id. 178. These services having been earned out of this state, the law would not apply to them. The amendatory act of 1848 extends it to causes arising out of the state, but it saves all bona fide purchasers. Swan's St. p. 187. This is not the case as to admiralty liens. They hold even against bona fide purchasers, who have no notice of the claim, but as to all causes arising out of the state, as this cause did, the amendatory act prohibits the libellants from proceeding as against a bona fide purchaser without notice. This very act shows that it does not take, and does not profess to take, cognizance of admiralty liens, for it prohibits a recovery in such cases. Since the amendatory law the lien has been held to be one remedial simply. Thompson v. The J. D. Morton, 2 Ohio St. 27; Hillyard v. The Spray, 10 West. Law J. 80; Barker v. The Flag, 1 Handy, 385. See, also, Canal Boat Huron v. Simmons, 11 Ohio, 458; Lewis v. The Cleveland, 12 Ohio, 341. It cannot, therefore, do more than to affect the rights of the owners, who bring her to the state, where only she can be seized under the act. Indeed, none but the owners and their agents have any authority to appear in the cause. They are authorized to appear, and release the boat, receive the money, appeal, &c., and the judgment professes to bind

them. Swan's St. p. 209. It does not profess to bind any one else. As a remedy, and as a lien, affecting merely the owners, when they appear it may be valid. Yet as a remedy it cannot take away the rights of any persons not made parties. Green v. Biddle, 8 Wheat. [21 U. S.] 75; Bronson v. Kinzie, 1 How. [42 U. S.] 311; Arrowsmith v. Burlingim [Case No. 563]; Norris v. The City of Boston, 4 Metc. [Mass.] 293; Pierce v. State, 13 N. H. 536.

As the act provides for no monition nor for bringing other parties before the court, none but those actually before the court are bound by the proceedings under it, nor can their rights be affected; certainly none who claim under another and higher law. The Globe [Case No. 5,484]; The Mary, 9 Cranch [13 U. S.] 126; Bradstreet v. Neptune Ins. Co. [Id. 1,793]. Proceedings in rem bind all the world only because monition issues, and all the world are made parties. The Mary, 9 Cranch [13 U. S.] 126; Bradstreet v. Neptune Ins. Co. [supra]. None are made parties here, and none have a right to appear except the owners and their agents. In this respect see the case of Germain v. The Indiana, 11 Ill. 535, which is a decision under a law identical with the Ohio law. This principle has been carried still further in Ohio. The old attachment law of Ohio provided that the judgments should be personal judgments, and that the balance not satisfied by the property attached should be collected on execution, as in other cases. Section 11, Swan's St. (§ 92, old Ed.). But the supreme court has held that no execution could be issued upon such for such balance, though the statute did authorize it. Arndt v. Arndt, 15 Ohio, 33; Pelton v. Platner, 13 Ohio, 209. Under this statute no monition or notice is given, and each person proceeds separately, and for himself; a separate record and judgment are had in each case. There are many cases where it has been held that such a sale does not deprive the libellants of their right thus to proceed. See Taylor v. The Royal Saxon [Case No. 13,803]; Gallatin v. The Pilot [Id. 5,199]; Wall v. The Royal Saxon [Id. 17,093]; Dudley v. The Superior [Id. 4,115]; Certain Logs of Mahogany [Id. 2,559]. It is the practice in the English admiralty to seize vessels under common law process. The Flora, 1 Hagg. Adm. 298. Even the state courts of the different states have held that a public sale under this law does not cut off liens under these laws. Wight v. Maxwell, 4 Mich. 45; Germain v. The Indiana, 11 Ill. 535; The Sea Bird v. Frances Beehler, 12 Mo. 571; Devinney v. The Memphis, 2 Am. Law Reg. 666; Reed v. Fawkes, 9 Port. (Ala.) 623. That state laws cannot apply to this class of vessels or interfere with admiralty liens, see, also, Smith v. The Eastern Railroad [Case No. 13,039]; The Chusan [Id. 2,717]; Dudley v. The Superior [supra]; Sexton v. The Troy, Id.

Mr. Coffin, for respondents.

McLEAN, Circuit Justice. The constitution of the United States declares that the judicial power shall extend "to all cases of admiralty and maritime jurisdiction," and the judiciary act of 1789 provides that the district courts shall have exclusive original cognizance of all civil causes of admiralty and maritime jurisdiction, "saving to suitors, in all cases, the right of a common law remedy, where the common law is competent to give it." 1 Stat. 76.

The supreme court of the United States has decided that the admiralty jurisdiction extends over all navigable waters of the United States, where the commerce is carried on between two or more states. Over a commerce which is limited to any state, the jurisdiction of such state is exclusive. And so, over a commerce between two or more states, the admiralty jurisdiction of the United States, under the constitution, is exclusive.

In the case of The General Smith, 4 Wheat. [17 U. S.] 438, it was held by the supreme court, that the maritime lien did not extend to the home port of the vessel. In this decision the common law of England was followed, as appears from the argument of Mr. Pinckney, and the decision of the court. In that case the proceeding was in rem, and not in personam. At the home port there is a maritime lien throughout continental Europe under the civil law, the same as at a foreign port. But so strenuously was this principle opposed by the common law lawyers of England, with Coke at their head, that the admiralty law was not permitted to operate within the body of any county in England; and in the above case of The General Smith, the supreme court adopted the same rule, at least so far as the maritime lien is concerned.

The maritime lien for seamen's wages is as old as the sea laws, whether founded on the Rhodian laws, the laws of Oleron, the ordinances of France, or the famous laws of Wisbuy. This law, being a part of the maritime system, was adopted by our constitution, and by the act of 1789 is declared to be exclusively of federal cognizance.

In an early period of our government the supreme court held, "The decree of a court of admiralty in rem is conclusive everywhere; and the grounds of such decree cannot be inquired into in any other admiralty court." Penhallow v. Doane's Adm'rs, 3 Dall. [3 U. S.] 54. This decision was placed upon the fact that the whole world are parties in an admiralty court. Every person interested may make himself a party, and in all cases notice is given with this view.

By the steamboat law of Ohio, passed in 1840 (Rev. St. Swan & C. c. 26, pp. 252, 257), an action may be brought against a steamboat or other water craft, for any cause or ground of action; and the vessel may be seized, her apparel and furniture, and finally

sold in satisfaction of the judgment. This law was amended in 1848, so as to authorize the procedure against the vessel though the cause of action may have arisen beyond the jurisdiction of the state, and though the boat may not have been navigating the waters of the state or those bordering upon it.

Another amendment of this law was made in 1843; the first section of which seems to have been intended for some other purpose than that which is expressed. And in 1851 an act was passed requiring ten days' notice to be given of the sale of a vessel, in a newspaper, in addition to the notice required in the preceding acts. In the preceding acts no notice of such sale is required, unless it be found in providing that execution shall issue according to the usual rules of such proceedings.

Under this law the steamboat in question was sold, and the purchasers claim to hold it exempt from the lien of seamen's wages of prior date.

The seamen's lien for wages is favored in the admiralty, and takes precedence over all other liens. The sailor is considered as a part of the ship, as indispensable to its movement as any part of its equipment.

Suppose the legislature of Ohio had provided that no maritime lien should be recognized within the state, could any one doubt that such an act would have been unconstitutional and void? This, perhaps, may be admitted, and the argument might still be urged, that a prior maritime lien may be barred by the subsequent sale of the vessel on a junior lien under the Ohio statute.

A case is cited of high authority lately decided in Louisiana, on the point before the court. It was held by Mr. Justice Campbell, in the case of Auther v. The Atlantic [Case No. 668], that the prior maritime lien of the libellants, who lived in New Orleans, was extinguished by a sale of the vessel at St. Louis, in Missouri, under a law of that state, it being the port where the vessel was registered, and consequently its home port.

That case may not be accurately reported, or was not, perhaps, fully presented by the counsel. I am quite sure that if the learned judge had had before him the Missouri statute, and the decisions on that statute by the supreme court of Missouri, he would have come to a different conclusion. The act of Missouri expressly provides, "the effect of a sale under the statute, shall be to discharge all other liens and incumbrances, under this act." This clearly imports that the act could only be applied in discharge of liens arising in the state of Missouri, and under the same act. It could, therefore, have no application to a prior maritime lien, arising in a foreign port; and this was the character of the lien claimed at New Orleans.

I am confirmed in this construction of the Missouri act, from the fact that it has so been construed by the supreme court of the state. The court held: "The Missouri statute concerning boats and vessels, is limited in its provisions to contracts made within the state, with boats used in navigating the waters of the state." No claim arising out of the state could, therefore, come under the act.

In addition to the above, the able district judge of the United States for Missouri, in the case of Harris v. The Henrietta [Case No. 6,121], held, that a sale of the vessel under the Missouri statute, did not displace a prior maritime lien for supplies. By an act of congress of the 19th of May, 1822, it is provided, "That proceedings in the courts of admiralty and maritime jurisdiction shall be according to the principles, rules and usages, which belong to courts of admiralty," &c. (4 Stat. 278); and this being within the constitution, is the supreme law of the land.

I have stated the saving clause in the act of 1789, which makes the admiralty jurisdiction of the district court exclusive "saving to suitors in all cases, the right of a common law remedy, where the common law is competent to give it." Is the procedure under the Ohio statute, a common law remedy? In Wight v. Maxwell, 4 Mich. 45, the supreme court of Michigan held that the procedure under the Ohio statute, was not a proceeding in rem.

I have read the Ohio statute with some care, and I find no provision for other creditors to appear, and make themselves parties to the suit. The ordinary notice of a sale of property on execution, under other laws, and a notice of ten days, required to be given in a newspaper by the last amendatory law, are the only provisions in the act as to notice.

In Bradstreet v. Neptune Ins. Co. [Case No. 1,793], Judge Story says: "It is a rule founded in the first principles of natural justice, that a party shall have an opportunity to be heard in his defense before his property is condemned. If a person have not such opportunity, and yet is deprived of his rights, the proceedings are not judicial, but arbitrary, and ought to have no intrinsic credit given to them, either for their justice or truth."

Chief Justice Marshall says, in Rankin v. Scott, 12 Wheat. [25 U. S.] 177: "The principle is believed to be universal, that a prior lien gives a prior claim, which is entitled to prior satisfaction out of the subject it binds, unless the lien be intrinsically defective, or be displaced by some act of the party holding it, which shall postpone him in a court of law or equity, to a subsequent claimant."

In the Eastern district of Pennsylvania,—Wall v. The Royal Saxon [Case No. 17,093],—a steamboat had been attached out of the supreme court of the state, eight days before she was libelled in admiralty by material men. The marshal made a special return, that he found the sheriff on board. The district judge took jurisdiction of the case and condemned the vessel, and ordered her to be sold, though this proceeding was opposed by

the attaching creditors. The purchaser's title, under the marshal's sale, was held to be good by the district judge; and on an appeal to the circuit court, his judgment was affirmed. Judge Grier, on the appeal said: "That Taylor's title, who purchased under the marshal, is good against all the world, will hardly admit of a doubt; and as between him and the sheriff's vendee, the latter's title is as completely divested as if he had bought land on execution which was afterwards sold on a mortgage, which was the oldest lien on the property."

That case was before the supreme court at the last term. The only difficulty in the mind of any judge was, whether, as the process from the state court was first served, the process in admiralty could be interposed, before the final action in that court. The maritime lien was prior in date, and no judge doubted that it was of paramount obligation to the local lien.

In a case before the circuit court of this circuit, at Detroit, a libel was filed and process served on a vessel, not known to have been previously attached under the local law of Michigan, but the sheriff and marshal agreed they would hold a common possession for all concerned. The vessel was condemned and sold under the local law; and on the same day, but after the sale under the Michigan act, she was sold by the marshal under a decree in the admiralty. The admiralty lien was prior in date, and, on appeal, I held the right of the purchaser paramount to the purchaser under the sheriff's sale. The only doubt I felt in that case was, as to the legal right of the marshal to attach the property, it having been attached by the sheriff. Some effect was given to the arrangement between the attaching officers. In The Chusan [Id. 2,717], Judge Story held, that a state could pass no law affecting the maritime lien.

The admiralty law prevails in all commercial countries. It has been formed by the experience of many centuries, from the necessity and convenience of commerce, under the lead of the most eminent jurisconsults of the civil law for ages, and it is most admirably adapted to maintain and advance the growing interests of our commerce. Already it is practically extended to all our internal navigable waters, on which floats a commerce annually exceeding in value ten hundred millions of dollars, and this immense property, in its transit, is protected and regulated by the long established rules of the admiralty; and the question is, shall this system be impaired, and its uniformity and efficiency broken down by the legislation of the different states, influenced by local interests?

If a state shall institute a proceeding in rem, unknown to the common law, which shall interfere with a rightful exercise of the admiralty law, it would be a violation of the constitution and laws of the Union. Each state has the exclusive regulation of its own commerce, and in regard to liens, the home ports of its vessels; and beyond these, the common law remedies remain unrestricted. Every one who deals with a ship, or purchases it, should be careful to be informed as to prior liens. From their nature they constitute a mortgage on the vessel, which is a wanderer, whether it plies in our own country or in foreign countries, and the credit given to it, in the form of bottomry bonds or otherwise, is often essential to its prosperous voyages. On the certainty of these liens much depends. A sale or transfer of the vessel by the owner, or a subsequent creditor, under the forms of law, will not displace them. Even a condemnation of the vessel by the government does not defeat the lien for seamen's wages. I affirm the decree of the district court, with costs.

NOTE. See Ashbrook v. The Golden Gate [Case No. 574]; Foster v. The Pilot [Id. 4,980]; Hill v. The Golden Gate [Id. 6,491]; The Gazelle [Id. 5,289]; The John Richards [Id. 7,361]; The Circassian [Id. 2,721]; also, The Skylark [Id. 12,928], decided by Drummond, J., Northern district of Illinois, February term, 1870. The lien of a seaman who is also part owner is, however, discharged. Gallatin v. The Pilot [Id. 5,199]. It is held in the Sailor Prince [Id. 12,218], that an attachment from a state court levied upon a vessel and her freight money would not prevent the district court from taking jurisdiction to enforce seamen's wages. The questions decided in this case are also thoroughly considered in Taylor v. Carryl, 20 How. [61 U. S.] 583.